United States District Court
Southern District of Texas
**ENTERED**
January 10, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| LAURA BARRERA METTING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:24-CV-00130 |
| | § | |
| CAROLYN COLVIN, | § | |
| Acting Commissioner of the Social Security | § | |
| Administration, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant informs the Court that Martin J. O'Malley is no longer the Commissioner of the Social Security Administration and that Carolyn Colvin is now the Acting Commissioner of Social Security. The Clerk is DIRECTED to substitute Carolyn Colvin as the defendant in this case.

Laura Barrera Metting ("Plaintiff") seeks judicial review of a final adverse decision by the Commissioner ("Commissioner") of the Social Security Administration ("SSA") pursuant to 42 U.S.C. § 405(g). Plaintiff's main concern is the determination by the administrative law judge ("ALJ") that Plaintiff has the residual functional capacity ("RFC") to perform light work, with some exceptions. (Doc. No. 10, pp. 3-4.) Plaintiff requests that the Court reverse the ALJ's decision and remand for further proceedings. *Id.* at 15.

On September 6, 2024, Plaintiff filed a brief in support of her claim. (Doc. No. 10.) On October 7, 2024, the Commissioner filed a response. (Doc. No. 11.) Parties have consented to proceed before a United States Magistrate Judge. (Doc. Nos. 6, 8.) After review of the parties'

briefing, the record, and relevant law, and for the reasons discussed below, the Court orders that the decision of the Commissioner be AFFIRMED and that this case be DISMISSED.

### A. Jurisdiction.

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g). This case has been referred to the undersigned pursuant to 28 U.S.C. § 636. The parties have consented to their case proceeding before a United States Magistrate Judge, including trial and judgment. (Doc. Nos. 6, 8.)

### B. Procedural history.

Plaintiff filed applications for disability insurance benefits and supplemental security income on July 28, 2021, alleging disability beginning on January 16, 2021. (Doc. No. 5-3, p. 16.) Plaintiff's claims were initially denied on March 2, 2022, because the SSA found that her condition was "not severe enough to keep [her] from working." (Doc. No. 5-5, p. 255.) Plaintiff appealed, and her claim was reconsidered and denied on November 28, 2022. (Doc. No. 10, p. 16.) Subsequently, on January 11, 2023, Plaintiff filed a written request for hearing before an ALJ. *Id.* This hearing was held on August 28, 2023, by telephone. *Id.* Plaintiff was represented at the hearing by a non-attorney representative. *Id.* Howard Marnan, an impartial vocational expert, also appeared at the hearing. *Id.*

On November 9, 2023, based on an evaluation of testimony from multiple evaluators and Plaintiff combined with the medical record, the ALJ concluded that though she could not return to her past relevant employment, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with certain exceptions. (Doc. No. 5-3, p. 23.) Relying on the vocational expert's testimony, the ALJ found that Plaintiff was capable of working as an

office cleaner, bench assembler, and merchandise marking clerk, all jobs that the ALJ found

exist in significant numbers in the national economy. *Id.* at 28. As Plaintiff was "capable of

making a successful adjustment to other work," the ALJ found that Plaintiff was not disabled.

*Id.* This shifted the burden of proof back to Plaintiff to rebut this finding. *See Fraga v. Bowen,*

810 F.2d 1296, 1302 (5th Cir. 1987).

On April 8, 2024, the Appeals Council denied Plaintiff's request for a review. (Doc. No.

5-3, pp. 2-5.) Having exhausted her administrative remedies, Plaintiff filed the instant action for

judicial review of the Commissioner's final decision on June 4, 2024, pursuant to 42 U.S.C. §

405(g). (Doc. No. 1.) She seeks reversal of the Commissioner's decision or remand for further

proceedings, as well as costs. *Id.* at 2.

### C. Standard of review.

Judicial review of the Commissioner's decision regarding a claimant's entitlement to

benefits is limited to two inquiries: (1) whether the decision is supported by substantial evidence

on the record as a whole; and (2) whether the decision applied the proper legal standard.

*Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457,

461 (5th Cir. 2005)). Substantial evidence is "more than a mere scintilla and less than a

preponderance." *Perez*, 415 F.3d at 461 (citations and internal quotations omitted). This means

"'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison*

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In applying this standard, "'[t]he court does not

reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the

Commissioner's, even if the evidence weighs against the Commissioner's decision.'" *Carey v.*

*Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).  Rather, the court must scrutinize the record to determine whether substantial evidence is present.  *Id.* at 135 ("Conflicts in the evidence are for the Commissioner to resolve.").  The Commissioner's decision is "granted great deference and will not be disturbed unless a reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  "If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed." *Heather H. v. Kijakazi*, No. 4:20-CV-736, 2021 WL 4138406, at *2 (S.D. Tex. Sept. 10, 2021) (Palermo, M.J.) (citations omitted).  The reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

To qualify for disability insurance benefits, "a claimant must suffer from a disability." *Copeland,* 771 F.3d at 923.  A disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months." 42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled for the purposes of disability insurance and thus entitled to disability benefits, the ALJ employs a five-step approach which considers whether:

> (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work.

*Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (citing *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018)); 20 C.F.R. § 404.1520.  The initial burden of proof lies with the claimant on the

first four steps.  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).  At the fifth step the

burden shifts to the Commissioner, who must show that claimant can perform other substantial

work in the national economy.  *Id.*  The ALJ may cease the analysis at any step if he or she finds

that the claimant is (or is not) disabled.  *See Copeland*, 771 F.3d at 923.

RFC, determined between the third and fourth steps, is the extent of labor that a claimant

can perform despite his or her limitations.  20 C.F.R. § 404.1545(a); *Perez*, 415 F.3d at 461–62.

In determining a claimant's RFC, the ALJ must consider all relevant medical and other evidence,

including statements by the claimant and his or her family members regarding the limitations that

result from the claimant's symptoms.  20 C.F.R. § 404.1545(a)(3).  While the claimant is

responsible for providing the evidence of his or her capacity or limitations, "the determination of

residual functional capacity is the sole responsibility of the ALJ."  *Taylor v. Astrue*, 706 F.3d

600, 602–03 (5th Cir. 2012); *Ripley v. Chater*, 67 F.3d 552, 447 (5th Cir. 1995).  The ALJ must

articulate how persuasive he or she finds each of the opinions in the record, and must explain his

or her conclusions while applying five factors: supportability; consistency; relationship with the

claimant; specialization; and other factors that tend to support or contradict a medical opinion or

prior administrative finding.  20 C.F.R. § 404.1520c(a).

At step four, the ALJ must determine if the claimant has the RFC to perform the

requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  The term "past relevant

work" means work performed (either as the claimant actually performed it or as it is generally

performed in the national economy) within the last 15 years, or 15 years prior to the date that

disability must be established.  20 C.F.R. § 404.1560(b)(2).  To qualify, the work performed

must have been substantial gainful activity and the period of employment must have been long

enough for the claimant to be trained to perform the duties of the job. 20 C.F.R. §§ 404.1560(b), 404.1565. If the claimant has the RFC to perform past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3).

When determining whether a claimant can perform past relevant work at the fourth step, the ALJ may rely upon a vocational expert's testimony to further investigate the claimant's RFC for work in light of a given set of limitations or impairments. *Carey*, 230 F.3d at 140. "A vocational expert is called to testify because of his [or her] familiarity with job requirements and working conditions" and may rely on his or her expertise to arrive at the conclusions he or she gives to the ALJ. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995). If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(c). Otherwise, the ALJ may end the disability analysis at step four.

In the fifth and final step, the ALJ answers the question of whether the claimant has the RFC to adjust to other work. 20 C.F.R. § 404.1520(a)(4)(v). To determine this, an ALJ will use the same assessment of RFC used in the fourth step. 20 C.F.R. § 404.1560(c). However, rather than applying the RFC to past work, at step five the ALJ is tasked with ascertaining if there is any other work that a claimant can perform. *Id.* To do so, the ALJ looks at a claimant's RFC in combination with vocational factors such as age, education, and work experience. *Id.* In order to find that the claimant is not disabled at step five, the SSA has the additional burden of showing that other work that the claimant can perform exists in "significant numbers in the national economy." *Id.* If the work does not exist in significant numbers or if the claimant cannot make the adjustment to other work, then the SSA will find that the claimant is disabled. 20 C.F.R. §

404.1520(g).  Vocational testimony that a claimant can perform a job suited to her capabilities satisfies the Commissioner's burden of showing that the claimant is not disabled.  *See Fortenberry v. Harris,* 612 F.2d 947, 950 (5th Cir.1980).

At issue in this case is step five.  At step five, the ability to perform one occupation is sufficient and determinative to show a plaintiff is not disabled.  *See* 20 C.F.R. § 404.1560.  If the ALJ concludes that Plaintiff is not disabled, as here, the burden shifts back to Plaintiff to overcome the finding.  *See Fraga,* 810 F.2d at 1302.  To do so, Plaintiff must show that she "lacks the residual functional capacity to perform: (1) the actual functional demands and job duties of [her] past job[(s)] and (2) the functional demands and job duties of the occupation[(s)] as generally required by employers in the national economy."  *Alfred v. Barnhart*, 181 F. App'x 447, 451 (5th Cir. 2006) (citations omitted).

For claims filed after March 27, 2017, the ALJ is not required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(a).  Plaintiff filed her claims on July 28, 2021.  (Doc. No. 10, p. 2.)  Therefore, the ALJ must consider "a list of factors in determining what weight, if any, to give a medical opinion."  *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) (*comparing* 20 C.F.R. § 404.1527 (2016) *with* 20 C.F.R. § 404).

Accordingly, in this case the ALJ was required to analyze all medical opinions and prior administrative medical findings by applying five factors: supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative finding.  20 C.F.R. § 404.1520c(a).  The most important of these factors are supportability and consistency, so "[a]n ALJ must articulate how [they] considered

the supportability and consistency factors for a medical opinion . . . in [their] determination." *William T. v. Comm'r of Soc. Sec.*, No. 6:18-CV-0055-BU, 2020 WL 6946517, at *3 (N.D. Tex. Nov. 25, 2020) (citing 20 C.F.R. § 404.1520c(b)(2)).

"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, the more consistent a medical opinion or prior administrative finding is, the more persuasive the medical finding will be. *Id.* § 404.1520c(c)(2). An adequate explanation of supportability and consistency is one that "'enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof.'" *Luckett v. Kijakazi*, 2021 WL 5545233, at *4 (S.D. Tex. Nov. 26, 2021) (Edison, M.J.) (quoting *Cooley v. Comm'r of Soc. Sec.*, No. 2:20-CV-46-RPM, 2021 WL 4221620, at *6 (S.D. Miss. Sept. 15, 2021)).

To determine whether there is substantial evidence of disability, the Court weighs: "(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his [or her] age, education, and work history." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (1991)). Despite Plaintiff's self-described limitations, the ALJ is not required to incorporate limitations in the RFC that he or she does not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (*per curiam*).

The ALJ's responsibility is to "interpret" the medical evidence to determine capacity to work. *Lasher v. Berryhill*, No. A-17-CV-464 AWA, 2018 WL 4560215, at *3 (W.D. Tex. Sept. 21, 2018) (citing *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016)). For a plaintiff to show that the ALJ erred in this determination, "the plaintiff must show that no reasonable person could find support in the record for the RFC assessed by the ALJ, not only that some conflict might appear to exist between a claimant's purported symptoms and the RFC." *Crista B. v. Berryhill*, No. 1:18-CV-00042-BP, 2019 WL 2996553, at *4 (N.D. Tex. June 19, 2019), *adopted sub nom. Crista B. v. Saul*, No. 1:18-CV-042-C-BP, 2019 WL 2996021 (N.D. Tex. July 9, 2019). Even if the court determines the evidence "preponderates in [the claimant's] favor," the court must still affirm the Commissioner's findings "unless [it finds] that there is not substantial evidence to support the ALJ's findings." *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985) (citing *Patton v. Schweiker,* 697 F.2d 590, 592 (5th Cir. 1983); *Olson v. Schweiker,* 663 F.2d 593, 595 (5th Cir. 1981)).

### D.  The August 28, 2023 ALJ hearing and decision.

At the time of the August 28 hearing, Plaintiff was 53 years old. *See* Doc. No. 5-8, p. 338. She had a general equivalency diploma and had received training to become a nurse aide. *Id.* Her employment history included working as a residential care aide and in housekeeping. (Doc. No. 5-3, pp. 27, 187-88*.*) Plaintiff was represented at the hearing by a non-attorney representative. *Id.* Plaintiff alleged disability based on severe impairments from rheumatoid arthritis, depression, anxiety, posttraumatic stress disorder, obesity, and carpal tunnel syndrome. (Doc. No. 10, p. 2; Doc. No. 5-3, p. 18.) Plaintiff alleged that she became disabled on January 16, 2021, when she was 50 years old. *See* Doc. No. 10, p. 2; *see also* Doc. No. 5-3, p. 28.

At the August 28 hearing, Plaintiff was questioned about her work history, her limitations and their causes. *See* Doc. No. 5-3, pp. 165-177. Plaintiff stated that she had not attempted to work since January 16, 2021. *Id.* at 165. She stated that she began suffering from depression in 2015, started treatment for anxiety in 2017, and attempted suicide "three years ago." [1] *Id.* at 165-67. Plaintiff said that she is taking medication for her depression. *Id.* at 167. The ALJ noted that Plaintiff's depression and anxiety was reported as "well controlled" in December 2022, and that in May 2023 she reported improved symptoms with medication. *Id.* at 25.

Plaintiff stated that she has experienced the pain in her back since 2013. (Doc. No. 5-3, p. 170-71.) Plaintiff described being limited to 30 minutes of standing and 20 minutes of walking at a time, constant discomfort from pain that leaves her unable to sit still, that she is only able to partially bend over, and that picking things up from the ground is difficult. *Id.* at 171-73. She stated that she has received injections to treat her arthritis and is taking medication for the same purpose, and she denied experiencing side effects to that medication. *Id.* at 170. The ALJ found that Plaintiff's claimed pain was limiting, but "when compared with the total evidence, not severe enough to preclude all types of work." *Id.* at 23. The ALJ noted that Plaintiff reported mild to moderate improvement of her rheumatoid arthritis symptoms with medications, and that x-rays were normal. *Id.* at 24. Plaintiff had reported hand pain and weakness, but did not require an assistive device for walking and had "5/5" bilateral grip strength in January 2022 as well as "5/5" strength and normal reflexes. *Id.*

The ALJ examined Plaintiff's medical record and self-described limitations as well as the opinions of two State agency reviewing physicians, two State agency reviewing psychologists,

---

[1] Plaintiff's medical records reflect that she reported an attempt to commit suicide on May 27, 2022, an attempt she made the previous week. (Doc. No. 5-9, p. 1084.)

and a "consultative" psychologist. *See* Doc. No. 5-3, pp. 25-28. The ALJ found that Plaintiff

had severe impairments including "rheumatoid arthritis, obesity, depression, anxiety,

posttraumatic stress disorder (PTSD), and carpal tunnel syndrome." *Id.* at 18. However, the ALJ

further found that Plaintiff did "not have an impairment or combination of impairments that

meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404,

Subpart B, Appendix 1." *Id.* at 19. The ALJ examined and rejected Listings 1.18,[2] 12.04, 12.06,

12.15, and 14.09[3] before concluding that Plaintiff has the RFC to perform light work, except that

she can never "climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs;

---

[2] Listing 1.18, "Abnormality of a major joint(s) in any extremity," documented by **A.**, **B.**, **C.**, *and* **D.**: **A** Chronic joint pain or stiffness. AND **B.** Abnormal motion, instability, or immobility of the affected joint(s). AND **C.** Anatomical abnormality of the affected joint(s) noted on: (1.) Physical examination (for example, subluxation, contracture, or bony or fibrous ankylosis); or (2.) Imaging (for example, joint space narrowing, bony destruction, or ankylosis or arthrodesis of the affected joint). AND **D.** Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least *one* of the following: (1.) A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or (2.) An inability to use *one* upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), *and* a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or (3.) An inability to use *both* upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4). Plaintiff has no documented medical need for an assistive device and the ALJ found that the evidence did not show Plaintiff's impairments met or medically equaled the criteria of the listing. (Doc. No. 5-3, pp. 19-20.)

[3] The ALJ considered 14.09 but found that the evidence did not show inflammatory arthritis that met the standard for this listing, specifically: "A. Persistent inflammation or persistent deformity of: 1. One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively; or 2. One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively, OR C. Ankylosing spondylitis or other spondyloarthropathies, with: 1.Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or 2.Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity. OR D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: 1.Limitation of activities of daily living. 2.Limitation in maintaining social functioning. 3.Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace." (Doc. No. 5-3, pp. 21-22.)

occasionally stoop, kneel, crouch, and crawl; and frequently handle." *Id.* at 22. The ALJ further

examined whether Plaintiff met the criteria under "paragraph B" of listings 12.04, 12.06, and

12.15. *Id.* at 20. The ALJ stated that to satisfy this criteria, Plaintiff's mental impairments must

result in "one extreme limitation or two marked limitations in a broad area of functioning."[4] *Id.*

The ALJ found that, based on the medical record, Plaintiff's self-assessment, and a consultative

psychological evaluation in January 2022, Plaintiff had a moderate limitation in understanding

remembering, or applying information. *Id.* The ALJ additionally found that Plaintiff had mild

limitations in interacting with others, adapting or managing herself, concentrating, persisting, or

maintaining pace. *Id.* These limitations did not meet the standard for two marked or one

extreme limitation, and so the ALJ concluded that the "paragraph B" criteria was not satisfied.

*Id.* at 21.

The first State agency reviewing physician assessed Plaintiff with the RFC for medium

work, "frequently climbing, stooping, kneeling, crouching, and crawling." (Doc. No. 5-3, p. 25.)

The ALJ found that Plaintiff was more limited than the assessment indicated and concluded that

these findings were only partially persuasive. The second State agency reviewing physician

assessed Plaintiff with the RFC for light work, "never climbing ladders/ropes/scaffolds …

occasionally handling and fingering bilaterally, and avoiding even moderate exposure to

hazards." *Id.* The ALJ found that the handling and fingering limitations, while supported by the

doctor's explanation and consistent with the medical record, were not supported by later findings

---

[4] "An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis." (Doc. No. 5-3, p. 20.)

at a consultative examination or by an EMG/NCV, and were therefore only partially persuasive. *Id.* at 25-26.

The first State agency reviewing psychologist, Dr. Harris, concluded that Plaintiff had moderate limitations in understanding, remembering, and applying information, and that she can understand and remember simple instructions and maintain focus on a task for a two-hour period over an eight-hour day within a 40-hour weekly schedule.  (Doc. No. 5-3, p. 26.)  The ALJ found that the psychologist's assessment was not consistent with the Plaintiff's treatment notes and was not internally consistent, and so found the assessment unpersuasive.  *Id.*

The second State agency reviewing psychologist, Dr. Germain, concluded that Plaintiff had moderate limitations in understanding, interacting with others, concentrating, and adapting or managing herself.  (Doc. No. 5-3, p. 26.)  However, the psychologist found that Plaintiff could understand and remember simple instructions, accept reasonable supervision, "adequately manage simple and routine work-related stress/pressures," make decisions, carry out detailed instructions, and respond to changes in a routine work setting.  *Id.*  The ALJ found that the psychologist's findings were not fully supported by their explanation, were internally inconsistent and that they were inconsistent with Plaintiff's treatment notes showing that her mental symptoms were generally controlled by medications.  *Id.*  As a result, the ALJ concluded that the findings were not persuasive.  *Id.*

Finally, the ALJ examined the conclusion of the consultative psychologist, Dr. Hernandez, who stated that claimant can understand and carry out instructions, but could not sustain concentration in a work-related activity at a reasonable pace.  *Id.*  While stating that this conclusion was "somewhat supported by the findings based on a single encounter and the

claimant's subjective report of symptoms," the ALJ found that it was not fully consistent with the examination findings or the record as a whole. *Id.* The ALJ found the consultative psychologist's opinion only partially persuasive.

After considering the record and medical evaluations as well as questioning the impartial vocational expert at the August 28 hearing, the ALJ found that Plaintiff had not been disabled from January 16, 2021 through the date of the decision, November 9, 2023. *See* Doc. No. 5-3, pp. 18-28.

### E. Discussion.

In this case, Plaintiff contends that the ALJ failed to account for the total limiting effects of Plaintiff's impairments and that the decision was therefore not supported by substantial evidence. (Doc. No. 10, p. 3.) She argues that the ALJ's findings are not consistent with the evidence and that the ALJ failed to properly explain why they did not wholly adopt the opinions of the state agency psychological consultants or the SSA's consultative examiner. *See id*. at 12-13. Plaintiff additionally argues that it was unreasonable to conclude that the medical record was inconsistent with the medical opinions offered by the state agency psychological consultants and the SSA's consultative examiner, as well as Plaintiff's self-described limitations. *Id.* at 9-11. Plaintiff further states that the record does not support the standing and walking requirements of light work, that the RFC includes no off-task or absenteeism limitations related to migraines and mental symptoms, and that the RFC does not account for social or adaptation limitations. *Id.* at 11. Finally, Plaintiff alleges that the ALJ "failed entirely to 'explain how [she] considered the supportability and consistency factors . . . in [her] determination or decision.'" (Doc. No. 10, p.

12) (quoting *Kilby v. Kijakazi,* 2022 WL 1797043, at *5 (S.D. Tex. Mar. 15, 2022) (Bryan, M.J.) (citation omitted)).

The Commissioner responds that substantial evidence supports the ALJ's RFC determination and that the ALJ applied the applicable law.  (Doc. No. 11.)  She contends that the ALJ "evaluated the supportability and consistency" of the medical opinions and reports and "articulated how persuasive she found each opinion to be."  *Id.* at 5.  While the Commissioner acknowledges that the ALJ's finding does not "directly correspond to any individual medical opinion," she notes that the Fifth Circuit has recognized no requirement that an ALJ's finding must do so.  *Id.* at 6.  As discussed next, the Court agrees with the Commissioner and finds that the ALJ's conclusion is supported by substantial evidence.

### 1. *Medical examiners and medical record.*

#### a. *Findings of state agency psychological consultants.*

The ALJ examined the assessments of two state agency psychological consultants.  (Doc. No. 5-3, pp. 25-26.)  For the first state agency psychological consultant, the ALJ concluded that their findings were "not fully supported by the psychologist's explanation; additionally, they are internally inconsistent, and are inconsistent with the claimant's treatment notes showing her mental symptoms are generally controlled with medications."  *Id.* at 26.  For the second, the ALJ stated that the administrative medical findings were similarly "not fully supported by the psychologist's explanation," were internally inconsistent, and were inconsistent with the claimant's treatment notes showing her mental symptoms as controlled with medications.  *Id.*

Plaintiff contends that this explanation is insufficient, citing *Williams v. Kijakazi* as support for the argument that "such a bare conclusion is beyond meaningful judicial review."

2022 WL 17542913 at *9 n.22 (E.D. La. Oct. 26, 2022). However, *Williams* does not support

Plaintiff's position. While the ALJ must "identify every Listing that could apply to the

claimant," in this case the ALJ did provide the exact Listings that she found Plaintiff's

impairments insufficient to meet as well as an explanation of the standard and how Plaintiff's

limitations failed to meet that standard. *See* Doc. No. 5-3, pp. 19-22; *Williams,* 2022 WL

17542913 at *9; *cf. Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007) (where ALJ did not

identify the listed impairment for which the claimant's symptoms failed to qualify and did not

provide any explanation as to how they reached the conclusion that the claimant's symptoms

were insufficiently severe, ALJ's finding amounted to a bare conclusion that was beyond

meaningful judicial review.) Specifically, the ALJ found that Plaintiff's impairments did not

meet the severity required for disability under Listings 1.18, 12.04, 12.06, 12.15, or 14.09. (Doc.

No. 5-3, pp. 19, 21-22.)

    Far from rendering a bare conclusion, by providing a foundation in facts and evidence the

ALJ created an opportunity for meaningful judicial review. When evaluating the opinion of Dr.

Harris, the first state psychologist, the ALJ stated the findings were not "fully supported by the

psychologist's explanation; additionally, they are internally inconsistent, and are inconsistent

with the claimant's treatment notes showing her mental symptoms are generally controlled with

medications." (Doc. No. 5-3, p. 26.) As the ALJ noted, Dr. Harris found moderate limitations in

understanding, remembering, or applying information, interacting with others, concentrating,

persisting, or maintaining pace, adapting, and managing herself, yet also found that Plaintiff

could "make decisions, attend and concentrate for extended periods, interact with others, and

respond to changes in a routine work setting." *Id.* (citing Exhibits C1A, C3A.) In exhibit C3A,

Dr. Harris stated that "the claimant's capacity to sustain work-related tasks remains intact."
(Doc. No. 5-4, p. 214.)

The ALJ concluded that the findings of second state psychologist, Dr. Germain, were
similarly not persuasive, for the same reasons that Dr. Harris' findings were not persuasive.
(Doc. No. 5-3, p. 26.)  While the two state psychologists agreed on Plaintiff's moderate
limitations, the ALJ concluded that they also shared the same flaws.  *See id*.  The ALJ cited
Exhibits C1A, C3A, C3F, and C7F11 in support of this conclusion.  *Id.*

Plaintiff's argument that the ALJ presented a "bare conclusion" is not convincing.  The
ALJ provided an explanation for how she reached her conclusion, including identifying the listed
impairments for which Plaintiff failed to qualify as well as an examination of medical testimony.
There is further substantial evidence to support the ALJ's conclusion that the prior administrative
medical findings of Dr. Harris and Dr. Germain were not persuasive.

### b. Findings of SSA's consultative examiner.

Plaintiff alleges that the ALJ's treatment of the consultative examiner's opinion was
"deficient."  (Doc. No. 10, p. 13.)  She argues that the ALJ's RFC determination does not
account for adaptation limitations and that the ALJ "failed to articulate whether she credited or
discredited" Dr. Hernandez's opinion that Plaintiff would have difficulties coping with the
pressures of a competitive work setting.  *Id.*

Plaintiff's argument fails because the ALJ did in fact articulate the credibility of Dr.
Hernandez's opinion, finding that while it was "somewhat supported by the findings" it was "not
fully consistent with the examination findings of 'minimal difficulties with attention and
concentration,' adequate remote memory, fair intermediate memory, adequate judgment, and fair

insight." (Doc. No. 5-3, p. 26) (quoting Doc. No. 5-8, p. 339). The ALJ further concluded that Dr. Hernandez's opinion was not fully consistent with the record as a whole, as the record reflected Plaintiff's mental symptoms as being managed with Zoloft, prescribed by her primary care provider. (Doc. No. 5-3, p. 26.)

The ALJ is not required to remove all doubts in rendering her opinion. It is sufficient that a reasonable person could find support for the ALJ's conclusion; even if the Court determined that the evidence "preponderates in [the claimant's] favor," the court must still affirm the Commissioner's findings "unless [it finds] that there is not substantial evidence to support the ALJ's findings." *Carry*, 750 F.2d at 482 (citation omitted). Here, the ALJ properly assessed the conclusions of the SSA's consultative examiner when determining Plaintiff's capacity to adapt and her ability to perform in a work environment. She analyzed the opinion of Dr. Hernandez in the context of the wider medical record, and there is substantial evidence supporting her finding that it was non-persuasive because Dr. Hernandez's opinion was not internally consistent or consistent with the record as a whole.

### c. Consistency in the medical record.

Plaintiff argues that the medical record is "entirely consistent" with the medical opinions at issue, and that "the ALJ did not reasonably conclude otherwise." (Doc. No. 10, p. 9.) Nothing Plaintiff cites, however, conflicts with the ALJ's interpretation. *See.* Doc. No. 5-3, pp. 5-10. The ALJ and Plaintiff note that in April and May 2022 Plaintiff reported worsening short-term memory, and that her depression was not controlled through June 2022. *See id;* Doc. No. 10, p. 10. Plaintiff then states, and the record reflects, that in July 2023 her provider increased her antidepressant dosage. *Id.* at 11 (citing Doc. No. 5-10, p. 63). The ALJ notes the increase in

dosage, but adds that in May 2023, prior to the increase, Plaintiff reported improved symptoms. (Doc. No. 5-3, p. 25.)

Plaintiff describes a series of issues and symptoms found from a January 2022 consultative examination. (Doc. No. 10, pp. 9-10.) The ALJ also referenced this examination, but additionally considered subsequent evaluations and medical history, noting that in May 2023 Plaintiff reported mild to moderate improvement of her rheumatoid arthritis symptoms with medication, declined surgical intervention, and had normal x-rays. (Doc. No. 5-3, p. 24.) For pain to be disabling, it must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Because Plaintiff's pain responded to treatment, substantial evidence supports the ALJ's finding that her pain is not disabling.

As stated previously, "'[t]he court does not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.'" *Carey*, 230 F.3d at 135 (quoting *Brown*, 192 F.3d at 496.). Rather, the court must scrutinize the record to determine whether substantial evidence is present. *Carey*, 230 F.3d at 135 ("Conflicts in the evidence are for the Commissioner to resolve."). The Commissioner's decision is "granted great deference and will not be disturbed unless a reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett*, 67 F.3d at 564.

The Court finds that there is substantial evidence in the record to support the findings of the ALJ and the Commissioner's decision regarding the medical record as a whole and its consistency with further evaluations and Plaintiff's self-described limitations.

### 2. *Plaintiff's self-described limitations.*

Plaintiff argues that the ALJ's conclusions did not adequately consider medical opinion evidence in relation to Plaintiff's self-described limitations. (Doc. No. 10, p. 14.) She specifically mentions two types of limitations: mental limitations and "self-described walking and standing limitations." She contends that the mental limitations are consistent with the opinions of Drs. Harris, Germain, and Hernandez, and that her self-described walking and standing limitations are consistent with the underlying record as well as the ALJ's own findings. *Id.*

20 C.F.R. § 404.1529 describes how the Commissioner evaluates symptoms, including pain. It states that while the Commissioner considers all of a claimant's statements about symptoms and how they affect their activities of daily living and ability to work, statements about "pain or other symptoms will not alone establish that [Plaintiff] is disabled." 20 C.F.R. § 404.1529(a). Instead, "objective medical evidence from an acceptable medical source" showing that Plaintiff has a medical impairment which could produce the pain or symptoms is considered along with all the other evidence. *Id.* The ALJ is not required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a).

Here, while the ALJ found that Plaintiff has rheumatoid arthritis, which has "more than a minimal effect on the claimant's ability to perform basic work-related activities," she also found

that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *See* Doc. No. 5-3, pp. 19-20, 22; Doc. No. 10, p. 14. After determining that there is a potential medical cause of symptoms, the ALJ must evaluate the "intensity, persistence, and limiting effects" of Plaintiff's symptoms, determining how much they limit her ability to perform work-related activities. (Doc. No. 5-3, p. 22.) There is evidence in the record that the ALJ conducted this evaluation, and that she found that Plaintiff's self-described limitations were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 23.

As to Plaintiff's self-described standing limitations, a state agency reviewing physician assessed Plaintiff with the RFC for medium work; another assessed Plaintiff with the RFC for light work with restrictions. *See* Doc. No. 5-3 at 25. Ultimately, the ALJ concluded that neither of the state reviewers reflected the full extent of Plaintiff's limitations based on the medical record and Plaintiff's self-described limitations, and so the ALJ included further restrictions on the type of tasks that Plaintiff could perform. *Id.* at 25-26. This action by the ALJ supports the Commissioner's contention that the ALJ did consider and properly evaluate Plaintiff's self-described limitations and that she weighed these limitations alongside the opinions of state agency reviewing physicians.

The Court's role is not to reweigh the evidence. Rather, the Court is tasked with determining whether substantial evidence supports the ALJ's decision and whether she applied the correct standard. It is for the ALJ to "determine an applicant's limitations and their application to the RFC." *Williams*, 2022 WL 17542913 at 18. There is substantial evidence

supporting the ALJ's decision and the Court finds that the ALJ followed the correct legal standard.

### G. Conclusion.

After review of the parties' briefing, the record, and relevant law, and for the reasons discussed above, the Court concludes that the Commissioner applied the proper legal standard in evaluating the medical opinions, determining Plaintiff's RFC, and finding Plaintiff not disabled, and that the Commissioner's decision was supported by substantial evidence. The Court therefore orders the decision of the Commissioner be AFFIRMED and that this case be DISMISSED.

ORDERED on January 10, 2025.

MITCHEL NEUROCK
United States Magistrate Judge